# EXHIBIT

# A

First Franklin
A National City Company

# MORTGAGE BROKER AGREEMENT

7129956 (54)

This Mortgage Broker Agreement, ("Agreement") is made and entered into as of and for this 3rd day of Dec, 2004, by and between Homeowners Mortgage Corp. ("Broker"), with its principal place of business at 108 West Shore Rd. Warwick, RI 02889, and FIRST FRANKLIN FINANCIAL CORPORATION, also known as FFFC and FFFC, Inc., a Delaware corporation, with its principal place of business at 2150 North First Street, San Jose, California 95131 ("First Franklin") and sets forth the terms, conditions and consideration pursuant to which Broker will provide the Goods and perform the Services as hereinafter set forth to First Franklin.

Based On The Mutual Covenants contained herein, the parties agree to the following terms:

## Article 1—General Agreement Terms

### 1.01 Definitions

Unless otherwise required by the context, the following terms shall have the following meanings respectively:

- "Affiliate"—A business entity controlling, controlled by or under common control with National City. Control exists when an entity owns or controls more than 50% of any entity including without limitation all affiliate banks.
- "Borrower"—An individual or individuals whom Broker is assisting to obtain a Loan.
- "Loan"—A loan or line of credit to be funded by First Franklin secured by a first or junior lien on residential property.
- "Goods and Services"—The goods, facilities and services provided by Broker under this Agreement as set forth in Section 3.01 of this Agreement.
- "National City"—National City Corporation

### 1.02 Entire Agreement

This Agreement, including Schedule A, which shall be and hereby is incorporated herein, contains the final and entire agreement of the parties and all other agreements whether oral or written made with respect to the subject and the transactions contemplated by this Agreement shall have no force or effect. No amendments, supplements or waivers of any provision of this Agreement shall be valid, other than with respect to compensation and Rate Sheets as provided in Article IV, unless by an instrument in writing, signed by authorized representatives of both parties.

### 1.03 Independent Contractor

The parties are independent contractors. Nothing in this Agreement or in the activities contemplated by the parties hereunder shall be deemed to create any agency, partnership, employment or joint venture relationship between the parties. Neither Broker nor any of its officers, employees or agents shall represent that they are agents or employees of First Franklin, National City or its Affiliates.

First Franklin
A National City Company

1.04 Laws, Regulations and Permits
Broker shall comply with all applicable federal, state and local laws, regulations and ordinances as they relate to this Agreement and Goods and Services delivered hereunder, including without limitation, the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Equal Credit Opportunity Act, the Fair Credit Reporting Act and all federal, state and local laws, regulations and ordinances applicable to mortgage brokers, consumer protection, telephone solicitation and telemarketing. Broker shall obtain and maintain in force during the term of this Agreement all permits and licenses necessary to enable Broker to lawfully provide the Goods and perform the Services required under this Agreement.

1.05 Assignment
First Franklin has entered into this Agreement with Broker in reliance on the specific qualifications of Broker to provide the Services contemplated hereunder; therefore, Broker may not assign or delegate this Agreement or any of its rights or obligations hereunder, whether by operation of law or otherwise, without prior written consent of First Franklin, which consent may be withheld in First Franklin's sole and arbitrary discretion, and subject to the requirement that Broker enter into a written contract that limits any such person's use and disclosure of First Franklin's Confidential Information, including any Borrower Information, as defined in Section 1.06(a) of this Agreement. First Franklin may assign its rights and benefits and delegate its duties and obligations to its Affiliates or to a transferee of all or substantially all of the assets or common stock of National City or any of its Affiliates.

1.06 Confidential Information
(a) "Confidential Information" means all written information provided by First Franklin to Broker in connection with First Franklin's loan programs, including policies, guidelines, credit criteria, Proprietary Documents as defined in Section 1.07(b), business practices, plans or proposals, all information provided by First Franklin to Broker regarding Borrower's transactions which are the subject of this Agreement and Borrower Information as defined below. Borrower Information means all information related to Borrower provided or developed by Borrower, Broker or First Franklin, regardless of whether First Franklin's or Broker's relationship with the Borrower ceases, including any nonpublic personal information as defined by federal law, including, but not limited to, the Gramm-Leach-Bliley Act, as it may be amended, any regulations promulgated thereunder and any other customer information protected by applicable state law. Confidential Information shall not include any information that: (a) enters the public domain other than as a result of disclosure by Broker; (b) with the exception of Borrower Information, is known by Broker at the time it is disclosed by First Franklin, as shown by Broker's records; (c) with the exception of Borrower Information, is independently developed by Broker at any time, as shown by Broker's records; or (d) is rightfully obtained by Broker from an independent third party who does not have an obligation of confidentiality to First Franklin.
(b) All Confidential Information shall be held in the strictest confidence and will not be disclosed by the Broker or its directors, officers, employees, affiliates, agents, advisors or representatives (collectively, the "Representatives"), except as specifically permitted by the terms hereof. Broker and its Representatives will use the Confidential Information solely for the purpose of the Agreement, will not use the Confidential Information for any other purpose and will not disclose or communicate the Confidential Information in any manner whatsoever, directly or indirectly, to any third party without the prior written consent of First Franklin, unless disclosure is permitted under Section 1.06(d). Broker further agrees that the Confidential Information will be disclosed only to such of its Representatives who need to examine the Confidential Information for the purposes described in this Section 1.06. Before being provided with any Confidential Information, each such Representative shall be informed by the Broker of the

First Franklin
A National City Company

confidential nature of the Confidential Information and the terms of this Agreement, shall be directed by the Broker to treat the Confidential Information confidentially and shall agree to abide by each provision of this Agreement. Broker shall in any event be responsible for any breach of this Agreement by any Representative.

(c) Broker shall take all necessary precautions to keep confidential the Confidential Information and shall take all necessary precautions to assure observation of this Agreement by its Representatives. All Confidential Information shall remain the exclusive property of First Franklin. Upon request by First Franklin, Broker shall promptly surrender to them any of the Confidential Information in the Broker's possession, and shall surrender all Confidential Information to First Franklin promptly and without request upon termination of the Agreement. Broker will not retain any copies of the Confidential Information, subject, however, to any requirement under applicable law that Broker retain copies of Borrower Information, including copies of Proprietary Documents completed with Borrower Information.

(d) Until First Franklin has approved the Loan and the Borrower has accepted the offer of credit, Broker can disclose Borrower Information to third parties as permitted by Borrower. In the event that Broker or any of its Representatives is requested or required (by oral question, interrogatories, requests for information or documents, subpoenas, civil investigation, governmental requirements or similar process) to disclose any of the Confidential Information, Broker will provide First Franklin with prompt notice of such requests so that First Franklin may seek an appropriate protective order, or if appropriate, waive compliance with the provisions of this provision. Broker will use its best efforts to obtain or assist First Franklin in obtaining such a protective order. Broker may disclose Borrower Information relating to a Loan if requested or required by Broker's regulatory authority without complying with the notification provisions in this Section 1.06(d).

(e) Broker acknowledges that a breach of this Section may result in continuing and irreparable damages to First Franklin for which there may be no adequate remedy at law. Broker hereby grants First Franklin the right to appear at any time in any court of law and to obtain an order against Broker enjoining and/or restraining Broker from using and/or disclosing such Confidential Information.

1.07 Publicity and Proprietary Documents

(a) Broker may not refer to, use, display, nor permit the use or display of, the name of First Franklin or any signs, symbols, trademarks, service marks, slogans or logos owned, licensed or used by National City or its Affiliates or in any way associated with the name of First Franklin or National City (collectively the "Marks") directly or indirectly, including without limitation in any advertising or promotional materials, print media, press release, electronic media, Web page advertising or Internet advertising without prior written consent of National City which consent may be withheld in National City's sole and arbitrary discretion.

(b) Broker will use any forms, agreements or documents created or prepared by First Franklin and provided to Broker (the "Proprietary Documents") solely for the purpose of the Agreement and will not use or permit the use of the Proprietary Documents by any of its Representatives for any other purpose. Broker may not reproduce or enter the Proprietary Documents into any computerized or electronic database or system without prior written consent of First Franklin, which consent may be withheld in First Franklin's sole and arbitrary discretion. Broker will immediately return to First Franklin any and all unused Proprietary Documents upon termination of this Agreement.

First Franklin
A National City Company

1.08 Governing Laws and Venue
This Agreement shall be governed by the internal laws and not the laws regarding conflicts of laws of the State of California. Venue for any judicial proceeding under this Agreement shall be in Santa Clara County, California.

1.09 Miscellaneous Provisions
(a) It is expressly agreed by the parties hereto that time is of the essence with respect to this Agreement including, but not limited to, any provisions for the delivery of Goods and Services and of any notice allowed or required herein. This Agreement shall be deemed fully executed by the parties when the same becomes binding upon the parties in accordance with its terms and conditions.
(b) Article and section headings are included for convenience only and are not to be used to construe or interpret this Agreement.
(c) No delay, failure or waiver of either party's exercise or partial exercise of any right or remedy under this Agreement shall operate to limit, impair, preclude, cancel, waive or otherwise affect such right or remedy.
(d) If any provision of this Agreement is held invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions shall in no way be affected or impaired thereby.
(e) This Agreement may be executed by the parties in one or more counterparts, and each of which when so executed shall be an original but all such counterparts shall constitute but one and the same instrument.
(f) All such notices permitted or required to be delivered hereunder shall be in writing and shall be deemed to have been properly given: (i) seventy-two (72) hours after being sent by certified mail, return receipt requested; (ii) forty-eight (48) hours after being sent by national overnight courier; (iii) on delivery, if personal delivery to the named individual addressees; or (iv) if sent by facsimile, on receipt if receipt was orally confirmed by the recipient. All such notices permitted or required to be delivered hereunder shall be addressed as follows:

If to Broker: Homeowners Mortgage Corp.
108 West Shore Rd.
Warwick, RI 02889

If to First Franklin: First Franklin Financial Corporation
2150 North First Street
San Jose, California 95131
Attn:

(g) The remedies set forth in this Agreement are not exclusive. Election of one remedy shall not preclude the use of other remedies and a party may seek any remedy generally available at law or in equity.
(h) The parties hereto hereby waive any right to trial by jury in matters arising out of this Agreement. BROKER AND FIRST FRANKLIN HEREBY SPECIFICALLY ACKNOWLEDGE THE AFORESAID WAIVER OF RIGHT TO JURY TRIAL.
(i) Except as otherwise specifically provided herein, nothing expressed or implied in this Agreement is intended or shall be construed, to confer upon or give any person or entity, other than Broker and First Franklin and its Affiliates any rights or remedies under or by reason of this Agreement.

**Article II—Broker's Representations and Agreements**

2.01 Authority

Broker warrants and represents that: (a) as of the date of this Agreement and throughout the term of this Agreement it is and will remain duly organized and validly existing as a corporation, partnership or other form of organization in good standing under the laws of the jurisdiction of its organization; and it has and will have the requisite power and authority to enter into and perform this Agreement; (b) this Agreement has been duly authorized, executed and delivered to First Franklin and constitutes a valid, legally binding and enforceable agreement, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles; (c) the execution and performance of this Agreement will not violate any provision of any organizational document, instrument, agreement, judgment, order, statute or regulation by which Broker is bound or to which it is a party or require the consent of any other person or governmental authority (unless such consent has been obtained); and (d) there is no action, proceeding or investigation pending or, to Broker's knowledge, threatened, that has or would have an adverse effect on Broker's performance of its obligations under this Agreement or which questions the validity of the Agreement or of any action taken or to be taken pursuant thereto.

2.02 Indemnification and Release

(a) Broker shall indemnify, defend and hold harmless First Franklin, its Affiliates and parent corporation, and their respective directors, officers, agents, and employees, successors, and/or assigns, from and against any and against all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred) by whomsoever asserted, including but not limited to the claims of: (1) the Borrower arising directly or indirectly out of the transaction which is the subject matter of this Agreement; and (2) any person or persons who prosecute or defend any actions or proceedings as representatives of or on behalf of any class or interest group or any governmental instrumentality, body, agency, department or commission or any administrative body or agency having jurisdiction pursuant to any applicable statute, rule, regulation, order or decree; which may arise or be incurred as a result of any action or inaction by Broker, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under this Agreement, except as such damage, loss, liability, cost, action, cause of action, claim, demand or expense is caused solely by the negligence or willful misconduct of First Franklin.

(b) Broker understands and agrees that First Franklin may report information about any application for a Loan that First Franklin believes to contain misrepresentations and/or irregularities to the applicable regulatory agency and to any mortgage industry background database, including, but not limited to, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX"). Broker agrees that it and its employees may be named as the originating entity or loan officer(s) on any such Loan. Broker acknowledges the importance of First Franklin's right and necessity to disclose such information. Without limiting the generality of Section 2.02(a), Broker, for itself and its directors, officers and employees and their respective successors and/or assigns hereby releases First Franklin, its Affiliates and parent corporation, and their respective directors, officers, agents, and employees, successors and/or assigns and Mortgage Asset Research Institute, Inc., from any and all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred) that may arise from the reporting or use by any database subscriber of any information submitted by First

Franklin with respect to Broker and its employees to any mortgage industry background database, including MIDEX.

**Article III—Performance Requirements**
3.01 Goods and Services
(a) Subject to the terms of this Agreement, Broker may from time to time submit to First Franklin applications for Loans in accordance with the lending program requirements provided to Broker by First Franklin, which may be changed from time to time at the sole discretion of First Franklin; provided, however, that any such submission, in and of itself, shall not be construed as creating any obligation on the part of First Franklin to accept any applications from Broker or, after acceptance, to make Loans with respect to those particular applications. First Franklin shall have complete and sole discretion as to any such decisions and the Loans made shall close in First Franklin's name. Broker shall not warrant or represent to any Borrower that First Franklin has approved or will approve and fund any Loan until such time as First Franklin has so informed Broker in writing. At the time of the submission of any Loan application, Broker shall properly prepare and furnish to First Franklin in the form required such items or documents as First Franklin may require and shall provide any additional documentation requested including information First Franklin requires to comply with applicable federal laws and regulations.
(b) Broker will make such investigations and inquiries to verify the truthfulness and completeness of all information relating to the Borrower's creditworthiness and collateral submitted in connection with an application for a Loan. Broker warrants and represents that as of the date the Loan is closed and funded by First Franklin all such information is true, accurate and complete and that Broker will not omit any material information. Broker further represents, warrants and covenants that it has no adverse information or documentation concerning any Borrower which it has not communicated to First Franklin and that all documents or instruments prepared or submitted by Broker in connection with such Loans will be valid and genuine in every respect. If at any time during the period between the submission of the Loan application and the closing and funding of the Loan, Broker learns, or has reason to believe, that any of its representations and warranties may cease to be true, Broker shall immediately give written notice thereof to First Franklin. Broker acknowledges that this warranty shall be deemed to have been relied upon by First Franklin regardless of whether First Franklin had the opportunity to or did independently verify or investigate any of the information submitted by Broker at any time, whether prior to Loan funding or thereafter, unless First Franklin determined that the information at issue was not true, accurate or complete prior to funding the Loan. First Franklin has no obligation to verify any information submitted by Broker.
(c) Broker represents and warrants that the appraisal was prepared by a qualified and properly licensed appraiser who meets First Franklin's requirements for appraisers and who had no direct interest in the secured property.
(d) With respect to each Loan application submitted to First Franklin under this Agreement, Broker agrees that if the Loan is rescinded pursuant to the Truth in Lending Act and Regulation Z or any other law, Broker will pay to First Franklin, on demand, all monies collected from Borrower prior to closing, so that First Franklin may return said monies to the Borrower.
(e) Broker shall provide and represents that it has provided the Goods and Services listed on Schedule A for any Loan for which it receives compensation from First Franklin pursuant to Article V.
(f) Broker agrees that no appraisal or title company controlling, controlled by or under common control with Broker shall be used in connection with the closing of any Loan.

First Franklin
A National City Company

3.02 Non-exclusive Engagement
Broker acknowledges that it is not now and will not be the exclusive provider of the Goods and Services to First Franklin and that First Franklin has made no representation as to any volume of Loan applications which it may accept or approve from Broker or from any other source. First Franklin acknowledges that Broker has no obligation to provide loan applications to First Franklin.

**Article IV—Compensation and Billing**
4.01 Compensation
(a) Broker's compensation for the Goods and Services provided may be paid through a combination of cash, origination points or financed through the interest rate, as determined by Broker and Borrower. Any Broker compensation financed by First Franklin is as consideration for the Goods provided and Services performed, as detailed in Article III and Schedule A and shall be as described on Rate Sheets provided by First Franklin to Broker from time to time. First Franklin reserves the right to change the compensation and other terms in the Rate Sheets at any time.
(b) Broker acknowledges that it must provide all disclosures required by federal and state law with respect to Broker's compensation. Broker agrees that it will not accept from or give to any person, directly or indirectly, any commission, fee or other thing of value other than as disclosed in accordance with and permitted by the Real Estate Settlement Procedures Act and that the total compensation Broker receives on Loans covered by this Agreement, including any compensation received from a Borrower, is for Goods or Services which Broker in fact rendered and does not exceed the fair market value of the Goods and Services actually provided and performed.
(c) Any compensation paid by First Franklin to Broker under this Article IV shall exclude all taxes and duties of any kind, if any, which either party is required to pay with respect to the Goods and Services covered by this Agreement.

**Article V—Termination and Survival**
5.01 Termination
(a) Either party may terminate this Agreement by written notice to the other, with or without cause. First Franklin shall pay for Goods and Services provided, performed, and accepted prior to the termination date and Broker shall provide and perform Goods and Services on Loans approved by First Franklin prior to the effective date of termination. Broker agrees to safeguard, remove, and deliver all property including all Confidential Information belonging to First Franklin in Broker's possession at the time this Agreement is terminated to First Franklin.

5.02 Survival
The rights and obligations of the parties, which by their nature survive the making of a Loan or the termination or completion of this Agreement, including but not limited to those set forth herein:

- In the Sections of Article I—General Agreement Terms titled:
  - Entire Agreement;
  - Assignment;
  - Confidential Information;
  - Publicity and Proprietary Documents;
  - Governing Laws and Venue;
  - Miscellaneous-Waiver of Jury Trial; and
- In the Sections of Article II—Broker's Representations and Agreements titled:
  - Authority; and Indemnification and Release shall remain in full force.

First Franklin
A National City Company

**The Parties Hereto** have caused this Agreement to be duly executed and each of the undersigned hereby warrants and represents that he or she has been and is, on the date of this Agreement, duly authorized by all necessary and appropriate action to execute this Agreement.

**BROKER**

Homeowners Mortgage Corp.
Company Name

108 West Shore Rd. Warwick RI 02889
Address City State Zip

401-732-1979 401-732-0050
Fax Phone

Donald A. Calitri Pres, Secretary, Treasurer
Print Name Title

Donald A. Calitri 12/3/04
Signature Date

**PRINCIPAL**

Donald A. Calitri President, Secretary, Treasurer
Print Name Title

Donald A. Calitri 12/3/04
Signature Date

**FFFC**
First Franklin Financial Corporation, a.k.a. FFFC and FFFC, Inc.
2150 North First Street, Suite 100
San Jose, CA 95131
1-408-964-6000

David McEntee Branch Manager
Print Name Title

[signature] 12/6/04
Signature Date